**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY,<br><br>      Plaintiff,<br><br>v.<br><br>HOMELAND POWER & UTILITY LLC, MICHAEL CARPENTER, and JONATHAN CARPENTER,<br><br>      Defendants.<br><br>MICHAEL CARPENTER,<br><br>      Plaintiff-in-Counterclaim,<br><br>v.<br><br>EMPLOYERS MUTUAL CASUALTY COMPANY,<br><br>      Defendant-in-Counterclaim.<br><br>MICHAEL CARPENTER<br><br>      Plaintiff-in-Crossclaim/<br>      Defendant-in-Crossclaim,<br><br>v.<br><br>JONATHAN CARPENTER,<br><br>      Defendant-in-Crossclaim/<br>      Plaintiff-in-Crossclaim. | No. 1:22-cv-11325-JEK |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, PLAINTIFF AND DEFENDANT MICHAEL CARPENTER'S JOINT MOTION FOR VOLUNTARY DISMISSAL, AND DEFENDANT MICHAEL CARPENTER'S MOTION FOR SUMMARY JUDGMENT**

**KOBICK, J.**

This is an indemnity action brought by Employers Mutual Casualty Company ("EMC"), a surety bond issuer, against Homeland Power & Utility LLC, Michael Carpenter, and Jonathan Carpenter. Homeland Power is an electrical contracting company co-founded by cousins Michael Carpenter and Jonathan Carpenter. EMC issued surety bonds to secure several of Homeland Power's electrical projects. When Homeland Power was unable to complete those projects, EMC made payments on the bonds and then sought indemnification under a contract it entered into with Homeland Power, Jonathan, and Michael in 2021. EMC contends that, under the terms of the parties' agreement, all three defendants are jointly and severally liable for losses and expenses that EMC incurred on the payment and performance bonds it issued on Homeland Power's behalf.

Following discovery and a negotiated settlement agreement between EMC and Michael, EMC moves for summary judgment against Jonathan on all counts. EMC also moves jointly with Michael for voluntary dismissal, with prejudice, of EMC's claims against Michael and Michael's counterclaim against EMC. And Michael separately moves for summary judgment against Jonathan on Jonathan's crossclaims against him, which allege that Michael breached his fiduciary duties and committed tortious conduct compelling another to defend.

For the reasons explained below, EMC's motion for summary judgment against Jonathan will be granted. EMC has produced *prima facie* evidence of the fact and amount of Jonathan's liability pursuant to the indemnity agreement among the parties. Jonathan, for his part, has not produced evidence to support his arguments that EMC lacked good faith in paying the claims against Homeland Power or that holding him to his contractual obligations would frustrate the

2

purpose of the indemnity agreement. EMC and Michael's joint motion for voluntary dismissal will be granted because dismissal will not prejudice Jonathan, the non-settling defendant, and the Court finds no evidence of bad faith in the settlement. Finally, summary judgment will be granted in favor of Michael on Jonathan's crossclaims against him because the applicable limited liability company operating agreement unambiguously eliminated Michael's fiduciary duties.

## BACKGROUND

The following facts, unless otherwise noted, are either undisputed[1] or recounted in the light most favorable to Jonathan, as the non-moving party.

## I.   __The Parties.__

Plaintiff EMC is a surety company that issues bonds on behalf of contractors to secure their performance on construction projects. ECF 113, ¶ 1. Defendant Homeland Power & Utility, LLC is an electrical contracting company based in Danvers, Massachusetts, co-founded by defendants Michael and Jonathan. ECF 134, ¶ 1. In June and November 2021, EMC issued payment and performance bonds (the "Bonds") on behalf of Homeland Power to secure its performance on three electrical work projects. ECF 113, ¶ 7. Namely, EMC issued (1) a $4,891,805.00 bond for electrical work for D.F. Pray, Inc. ("D.F. Pray Project" or "D.F. Pray Bond"); (2) a $981,635.62 bond for electrical work for the Bangor Water District ("Bangor Project" or "Bangor Bond"); and

---

[1] In responding to EMC's and Michael's respective statements of undisputed material facts, Jonathan repeatedly purports to "dispute" the proffered facts. Yet Jonathan often neither "cite[s] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that support his assertion that a material fact is genuinely disputed, Fed. R. Civ. P. 56(c)(1)(A), nor contends that the evidence cited by EMC or Michael is inadmissible, *see* Fed. R. Civ. P. 56(c)(1)(B). Thus, where supported by admissible evidence and not disputed by Jonathan with reference to the record, as required by Rule 56(c), the Court accepts the facts set forth in EMC's and Michael's respective statements of undisputed material facts. *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

(3) a $2,063,759.60 bond for electrical work for Eastern Maine Electric Cooperative ("EMEC Project" or "EMEC Bond"). *Id.*

## II.     **The General Application and Agreement of Indemnity.**

EMC issued the Bonds on behalf of Homeland Power in reliance on a General Application and Agreement of Indemnity (the "Indemnity Agreement") that EMC entered into on June 28, 2021 with Homeland Power, Jonathan (in his individual capacity), and Michael (in his individual capacity). *Id.* ¶ 4; ECF 106-2, at 6.[2] Pursuant to Section 2 of the Indemnity Agreement, Homeland Power, Jonathan, and Michael—jointly and severally—agreed to exonerate and indemnify EMC for any liabilities it incurred as a result of issuing the Bonds. ECF 106-2, at 1; ECF 113, ¶¶ 6, 13. Specifically, Section 2 provided:

> The Undersigned shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Principal or the Undersigned to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. . . . The surety may pay or compromise any claim, demand, suit, judgement [sic] or expense arising out of such bond or bonds and any such payment or compromise shall be binding upon the Undersigned and included as a liability, loss or expense covered by this Indemnity Agreement. In the event of any such payment or compromise by the Surety, an itemized statement thereof sworn to by an officer of the surety, or the voucher or vouchers of other evidence of such payment or compromise, shall be prima faci[e] evidence of the fact and amount of the liability of the Undersigned under this Agreement.

ECF 106-2, § 2; ECF 113, ¶ 6.

---

[2] Michael did not sign the Indemnity Agreement himself. ECF 134, ¶ 44. Rather, Jonathan signed on Michael's behalf. *Id.* The Carpenters dispute whether Jonathan had Michael's permission to do so, and thus contest the validity and effect of Michael's signature. *Id.* Nevertheless, since this dispute of fact is material only to Michael's crossclaims against Jonathan, *see* ECF 66—which are not currently before the Court—the Court will treat Michael's signature as evidence that he was bound by the Indemnity Agreement in his individual capacity, but strictly for purposes of deciding the three pending motions.

Pursuant to Section 3 of the Indemnity Agreement, EMC retained the exclusive right to determine whether claims on the Bonds should be paid. ECF 106-2, § 3. Specifically, Section 3 provided:

> The Surety shall have the exclusive right for itself and for the Undersigned to decide and determine whether any claim, demand, suit or judgment upon any such bonds shall, on the basis of liability, expedite or otherwise be paid, settled, defended or appealed, and its determination shall be final, conclusive and binding upon the Undersigned.

*Id.*

In addition, Section 11 of the Indemnity Agreement obligated Homeland Power, Jonathan, and Michael to provide EMC with cash or collateral on demand. *See* ECF 113, ¶ 17. Specifically, Section 11 provided:

> If for any reason the Surety shall be required or at its option and in its sole discretion shall deem it necessary to set up a reserve in any amount to cover any: (a) judgment, actual or contingent, with interest and costs, in any action instituted against one or more of the Undersigned, or (b) unadjusted claim(s) or other claims under said Bond or Bonds of which the Surety has notice, or (c) loss, costs, attorneys' fees, engineers' fees, investigative charges and other disbursements and/or expenses in connection with said Bond or Bonds or in anticipation of loss thereunder, whether or not the Surety shall theretofore have paid any such sums or any part thereof, or (d) any default(s) of the Principal or, (e) abandonment of any contracts, failure to comply with any material provision thereof or cease to promptly perform any part of the work required to be performed thereunder, or to pay claims of suppliers of labor, material or services required under such contracts, or (f) liens filed or, (g) disputes with the owner or obligee or, (h) for any reason whatever and regardless of any proceedings contemplated or taken by the Principal or the pendency of any appeal, the Undersigned within 10 calendar days after mailing by the Surety of written demand by registered or certified mail shall deposit with the Surety, cash or collateral in the amount of such reserve and every increase thereof, to be held by the Surety as collateral with the right to use any such funds or any part thereof, at any time, without notice to the Undersigned in payment or compromise of any judgment, claim, liability, loss, damage, attorneys' fees, engineers' fees, investigative charges and other disbursements and/or expenses in connection with said Bond or Bonds or in anticipation of loss thereunder.

*Id.*; ECF 106-2, § 11.

Finally, Section 20 of the Indemnity Agreement authorized EMC to settle with one or more of the defendants without reference to the others. ECF 120, at 2. Specifically, Section 20 provided:

> In the event of any claim or demand made by the Surety against the Undersigned by reason of the execution of any Bonds, the Surety is hereby expressly authorized to settle with one or more of the Undersigned individually, and without reference to the others, and, such settlement or composition shall not affect the liability of any of the other parties included in the designation "Undersigned", and the Undersigned hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consents to any settlement or composition that may hereafter be made.

ECF 106-2, § 20.

### III.     The Corporate Structure of Homeland Power and Homeland Holding Company.

At its inception, Homeland Power was structured such that its sole member was a holding company—Homeland Holding Company, LLC—and the sole members of the holding company were Michael and Jonathan, who held 51% and 49% interests, respectively. ECF 128-2, at 16; ECF 128-3, at 15, 60; ECF 134, ¶ 2. Homeland Holding Company was a manager-managed LLC, and, at the time of formation, Jonathan was its sole manager. ECF 128-3, § 7.1; ECF 134, ¶¶ 7-8, 62, 65. Jonathan also served as the President of Homeland Power from the start of its operations in January 2021 through May 19, 2022. ECF 134, ¶ 5. Although Michael was the majority-interest-holding member of Homeland Holding Company, he never served as manager of the LLC. *See id.* ¶¶ 2, 63. Michael later assigned the entirety of his 51% interest in Homeland Holding Company to an entity called Gemshore Homeland Power, LLC on December 31, 2021. *Id.* ¶ 6.

The Homeland Holding Company operating agreement set forth the rights and duties of its members and of its managers, including the extent to which members and managers would owe fiduciary duties. *Id.* ¶¶ 60-63; ECF 128-3, §§ 6-7. Article 6 of the operating agreement provided, "[o]ther than being subject to the implied covenant of good faith and fair dealing, a Member is subject only to the fiduciary duties set forth in this Agreement." ECF 128-3, § 6.15; ECF 134, ¶ 60. The agreement did not, however, explicitly enumerate any fiduciary duties for members. ECF 134, ¶ 61; *see* ECF 128-3.

**IV.**     <u>**The Liquidation of Homeland Power.**</u>

On May 19, 2022, Jonathan was placed on unpaid medical leave of absence from Homeland Power, by either Michael or Gemshore. ECF 134, ¶¶ 6, 46; ECF 134-1, at 13-14; ECF 134-2, at 7.[3] Subsequently, Michael engaged StoneTurn Group, LLC, a forensic accounting and business management consulting firm, to assess the financial health of Homeland Power. ECF 134, ¶ 47. Michael also engaged Robert Wexler of the Tron Group, a "work out" firm, to develop a restructuring plan for Homeland Power. *Id.* ¶ 49. Through its analysis, StoneTurn Group found that Homeland Power had persistent net cash deficiencies and was struggling to pay its employees and vendors. *Id.* ¶¶ 55-56. The Tron Group similarly found that Homeland Power was in significant debt, could not successfully perform on its contracts, and was unable to satisfy its payroll obligations. *Id.* ¶ 50. The Tron Group determined that Homeland Power could not be restructured and recommended that it be liquidated. *Id.*

Accordingly, Gemshore—then, the majority interest holder of Homeland Holding Company—removed Jonathan as manager and appointed Wexler as the new sole manager of Homeland Holding Company on June 16, 2022. *Id.* ¶ 7. Upon his appointment as manager, Wexler terminated Jonathan's employment with Homeland Power. *Id.* ¶¶ 8, 51. The remainder of Homeland Power's employees, including upper management, were also terminated as part of the wind down of the company. *Id.* ¶ 52.

**V.**     <u>**EMC Issues Payments on the Bonds.**</u>

Also on June 16, 2022, Homeland Power defaulted on its subcontract obligations related to the D.F. Pray Project. ECF 113, ¶ 8. Thereafter, D.F. Pray issued a notice of default, which

---

[3] Michael avers that Gemshore placed Jonathan on unpaid leave of absence; Jonathan avers that it was Michael who placed him on unpaid leave of absence. ECF 134, ¶ 46. This dispute is not material to the pending motions.

Homeland Power failed to cure, and EMC subsequently agreed to arrange for the completion of Homeland Power's remaining work pursuant to the D.F. Pray Bond. *Id.* Consistent with its agreement, EMC issued payments to D.F. Pray in an amount of $4,352,346.63—the cost to complete Homeland Power's scope of work less the remaining subcontract balance. *Id.* ¶ 9. In addition, EMC received numerous claims on the D.F. Pray, EMEC, and Bangor Bonds from various Homeland Power subcontractors and suppliers connected to those projects. *Id.* ¶ 10. EMC investigated each claim and then made payments to twelve different claimants, for a total amount of $408,557.93. *Id.*[4] EMC also incurred additional expenses in the amount of $227,684.53. *Id.* ¶ 11. On July 29, 2022, consistent with Section 11 of the Indemnity Agreement, EMC issued a collateral demand in the amount of $2,845,000. *Id.* ¶ 18. Pursuant to Section 11, Homeland Power, Jonathan, and Michael had ten calendar days to deposit collateral with EMC, but they failed to make a deposit. *See id.* ¶¶ 17, 19; ECF 106-2, § 11.

Since issuing its collateral demand, EMC has secured Homeland Power subcontract balances and reached negotiated resolutions with defendants other than Jonathan. ECF 113, ¶ 14. Through such recoveries, EMC reduced its losses and expenses in the amount of $2,714,295.99. *Id.* Thus, EMC has incurred net losses and expenses totaling $2,274,293.10 as a result of having issued the Bonds. *Id.* ¶ 15.

---

[4] In particular, EMC made the following payments related to the EMEC Project: $46,085.32 to IBEW Local 104; $71,367.68 to Poleset Equipment, LLC; $26,627.69 to Premier Truck Rental, LLC; and $87,292.78 to Shawmut Equipment Company, Inc. ECF 113, ¶ 10. It made the following payments related to the D.F. Pray Project: $16,045.43 to Granite Electrical Supply Co.; $75,000 to Local 103 IBEW; $10,034.45 to NEFCO Corporation; $33,430.54 to Rexel USA, Inc.; $2,687.16 to The Eagle Leasing co., Inc.; $23,902.64 to Turtle & Hughes, Inc.; and $6,687.90 to U.S. Electrical Services, Inc. *Id.* Finally, related to the Bangor Project, EMC made a payment of $9,396.34 to IBEW Local 104. *Id.*

**VI.**     <u>**Procedural History.**</u>

EMC filed this lawsuit against Homeland Power, Jonathan, and Michael in August 2022. ECF 1.[5] Its complaint asserts claims for declaratory relief against Michael (Count I); contractual indemnity against Homeland Power, Michael, and Jonathan (Counts II and III); common law indemnity against Homeland Power, Michael, and Jonathan (Count IV); and *quia timet* and exoneration against Homeland Power (Count V). *Id.* ¶¶ 44-65. Michael asserted a counterclaim for declaratory relief against EMC. ECF 16, ¶¶ 51-53.

Michael and Jonathan also asserted crossclaims against each other. Michael's crossclaims against Jonathan allege common law breach of fiduciary duty (Count I and II); tortious conduct compelling another to defend (Count III); conversion (Count IV); a violation of M.G.L. c. 214, § 3A (Count V); and common law fraud (Count VI). ECF 66, ¶¶ 140-61. Jonathan's crossclaims against Michael allege common law breach of fiduciary duty (Count I) and tortious conduct compelling another to defend (Count II). ECF 48, ¶¶ 37-44.

During discovery, EMC and Michael reached a confidential settlement that significantly reduced the net losses EMC claims in this case. ECF 120, at 1. Following discovery, EMC moved for summary judgment on its indemnity claims against Jonathan. ECF 104. In light of their settlement, EMC and Michael jointly moved for voluntary dismissal with prejudice of their claims against one another. ECF 119. And Michael moved for summary judgment on both of Jonathan's crossclaims against him. ECF 125.

---

[5] EMC initially named as a defendant Homeland Power and Utility, LLC, a Delaware LLC and an entity different than defendant Homeland Power & Utility, LLC, the Massachusetts LLC. ECF 1, ¶¶ 2-3. EMC stipulated to dismissal of Homeland Power and Utility, LLC on December 16, 2022. ECF 28.

## STANDARD OF REVIEW

Summary judgment is appropriate when, based upon the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). To prevail, the moving party must show that "there is no factual determination which a 'rational factfinder' could make as to the 'existence or nonexistence' of a fact that 'has the potential to change the outcome of the suit.'" *Gibson Found., Inc. v. Norris*, 88 F.4th 1, 5 (1st Cir. 2023) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 4-5 (1st Cir. 2010)). Courts "must consider the record and the reasonable inferences drawn therefrom in the light most favorable to the nonmovant," but "need not credit 'conclusory allegations, improbable inferences, and unsupported speculation.'" *Dixon-Tribou v. McDonough*, 86 F.4th 453, 458 (1st Cir. 2023) (quoting *Lahens v. AT&T Mobility Puerto Rico, Inc.*, 28 F.4th 325, 333 (1st Cir. 2022)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

Federal Rule of Civil Procedure 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The rule's "purpose is to permit the plaintiff, with approval of the court, voluntarily to dismiss an action as long as 'no other party will be prejudiced.'" *Doe v. Urohealth Sys. Inc.*, 216 F.3d 157, 160 (1st Cir. 2000) (quoting *Puerto Rico Maritime Shipping Auth. v. Leith*, 668 F.2d 46, 50 (1st Cir. 1981)). "The court is responsible for ensuring that such prejudice will not occur."

*Colón-Cabrera v. Esso Standard Oil Co. (Puerto Rico), Inc.*, 723 F.3d 82, 87 (1st Cir. 2013). "In deciding whether to grant a Rule 41(a)(2) motion, courts typically look to the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant." *Urohealth Sys. Inc.*, 216 F.3d at 160 (citations and quotation marks omitted). "But, courts need not analyze each factor or limit their consideration to these factors." *Id.*

## DISCUSSION

### I.     EMC's Motion for Summary Judgment Against Jonathan.

EMC seeks judgment on its claims against Jonathan for contractual indemnity and common law indemnity.[6] The Court analyzes both claims pursuant to the Indemnity Agreement because it contains an express indemnity provision. *See Great Am. Ins. Co. v. RDA Constr. Corp.*, No. 13-cv-11593-DJC, 2015 WL 5163043, at *3 n.1 (D. Mass. Sept. 3, 2015) (analyzing indemnity claims as an alleged breach of the parties' indemnity agreement where surety had asserted claims of indemnity, common law indemnity, and breach of contract). For the reasons discussed, EMC has produced evidence of the fact and amount of Jonathan's liability under the Indemnity Agreement, but Jonathan has failed to present affirmative evidence that rebuts EMC's evidence or otherwise offer a colorable argument refuting liability.

---

[6] Although EMC indicates in its motion that it moves for summary judgment "on all claims set forth in the Complaint," ECF 104, at 1, EMC agreed at the motion hearing that its declaratory judgment claim (Count I) is not subject to its motion for summary judgment against Jonathan, because that claim applies only to Michael and will thus be resolved by its motion for voluntary dismissal, *see* ECF 136. EMC's claim for *quia timet* and exoneration (Count V) likewise is asserted against Homeland Power only. ECF 1, ¶¶ 62-65.

A.   Jonathan's Duty to Indemnify EMC.

"Massachusetts courts have held that a surety seeking indemnification based on . . . an [indemnity] agreement is entitled to judgment as a matter of law provided that it acted in good faith in incurring the expenses for which it seeks indemnity." *Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 7 (1st Cir. 2008) (citing *Am. Emps.' Ins. Co. v. Horton*, 35 Mass. App. Ct. 921, 923 (1993); *Hartford Accident & Indem. Co. v. Millis Roofing & Sheet Metal, Inc.*, 11 Mass. App. Ct. 998, 999 (1981)).[7] To prevail, EMC must demonstrate "(1) that the parties reached a valid and binding agreement, (2) that [Jonathan] breached a material term of the agreement, and (3) that [EMC] suffered damages because of [Jonathan's] breach." *Fid. & Guar. Ins. Co. v. Boustris*, No. 08-cv-11198-RGS, 2010 WL 4183879, at *2 (D. Mass. 2010) (citing *Michelson v. Digital Fin. Servs.*, 167 F.3d 715, 720 (1st Cir. 1999)). Contract interpretation is a question of law for the court, and "[w]here the language of a contract is clear and unambiguous, . . . the court may interpret the meaning of the contract as a matter of law without resort to extrinsic evidence or determinations of fact." *Sullivan v. Southland Life Ins. Co.*, 67 Mass. App. Ct. 439, 440 (2006).

The parties do not dispute the validity or the enforceability of the Indemnity Agreement, nor do they dispute that Jonathan breached material terms of the agreement by failing to deposit

---

[7] While the Indemnity Agreement provides that "[i]t shall be construed and interpreted in accordance with the laws of the State of Iowa," ECF 106-2, § 27, the parties assume that Massachusetts substantive law applies, *see* ECF 105, at 8-13; ECF 112, at 5-10. "In this situation, . . . where there is at least a reasonable relation between the dispute and the forum whose law has been selected by the parties, [the Court] will forego an independent analysis of the choice-of-law issue and apply the state substantive law selected by the parties." *Federal Ins. Co. v. Raytheon Co.*, 426 F.3d 491, 496 n.2 (1st Cir. 2005) (citations and quotation marks omitted); *see also Great Am. Ins. Co.*, 2015 WL 5163043, at *3 n.2 (taking the same approach). Nevertheless, Iowa's contractual indemnity principles are analogous to those of Massachusetts. *See Evans v. McComas-Lacina Const. Co.*, 641 N.W.2d 841, 844 (Iowa 2002) ("Contractual indemnity is not disfavored [under Iowa law] and ordinarily will be enforced between the parties according to its terms." (citations and quotation marks omitted)).

collateral with or otherwise indemnify EMC for its losses and expenses.[8] The Indemnity Agreement makes Homeland Power, and Jonathan and Michael in their individual capacities, "jointly and severally" responsible for all terms in the agreement. ECF 106-2, at 1; *see Commonwealth v. Boston Edison Co.*, 444 Mass. 324, 327 n.4 (2005) ("Where joint and several liability applies, plaintiffs may recover their full damages from any liable party."). Section 2 of the agreement specifies that they "shall exonerate, indemnify, and keep indemnified [EMC] from and against any and all liability for losses and/or expenses of whatsoever kind or nature . . . and against any and all such losses and/or expenses which the Surety may sustain and incur . . . [b]y reason of having executed or procured the execution of the Bonds." ECF 106-2 § 2; ECF 113, ¶ 6. Section 3 of agreement further provides that EMC "shall have the exclusive right for itself and for the Undersigned to decide and determine whether any claim, demand, suit or Judgment upon any such bonds shall, on the basis of liability, expedience or otherwise be paid, settled, defended or appealed, and its determination shall be final, conclusive and binding upon the Undersigned." ECF 106-2, § 3. The undisputed evidence shows that EMC made payments on, and incurred expenses in connection with, the D.F. Pray, Bangor, and EMEC Bonds, ECF 113, ¶¶ 8-11, and that Jonathan has not deposited collateral or indemnified EMC for those payments and expenses, *id.* ¶¶ 13-15, 17-19.

Rather than contest this evidence, Jonathan contends that EMC has failed to produce the *prima facie* evidence, required by Section 2 of the Indemnity Agreement, that it has suffered damages as a result of his breach. In relevant part, Section 2 provides that "[i]n the event of any

---

[8] Jonathan "disputes" EMC's claimed losses and expenses insofar as EMC's "self-serving affidavit without further documentation is an insufficient basis to substantiate expenses." ECF 112, at 6-7; ECF 113, ¶¶ 9-12, 14-15. The Court addresses this particular argument below, but clarifies here that while Jonathan contests the substance of EMC's claims and losses, he does not contest the fact that EMC has claimed losses and expenses under the Indemnity Agreement.

such payment or compromise by the Surety, an itemized statement thereof sworn to by an officer of the surety, or the voucher or vouchers of other evidence of such payment or compromise, shall be prima faci[e] evidence of the fact and amount of the liability of the Undersigned under this Agreement." ECF 106-2, § 2. Jonathan contends that EMC's evidence does not constitute "an itemized statement thereof sworn to by an officer of the surety" because it is insufficiently detailed and relies on hearsay.

The Court disagrees. As evidence of its losses and expenses, EMC has submitted the affidavit of Ryan Springer, an employee and officer of EMC who holds the position of "Vice President Bond." ECF 106-1, ¶ 1; ECF 116-1, ¶ 1. The Springer Affidavit lists (i) a payment to D.F. Pray in the amount of $4,352,346.63, ECF 106-1, ¶ 7; (ii) payments to numerous subcontractors and suppliers of Homeland Power in the combined amount of $408,557.93,[9] *id.* ¶ 8; and (iii) expenses incurred under the Bonds in the amount of $227,684.53, *id.* ¶ 9. It also reflects the amount by which EMC has reduced its losses and expenses, $2,714,295.99, *id.* ¶ 12, and EMC's net losses and expenses through December 31, 2023, $2,274,293.10, *id.* ¶ 13. This accounting is sufficient to constitute an "itemiz[ation]" under the terms of the Indemnity Agreement. ECF 106-2, § 2. It contains the sworn statements of an officer of EMC and clearly delineates the individual payments and expenses that make up its net losses and expenses. ECF 106-1, ¶¶ 7-9, 12-13; *see Hartford Accident & Indem. Co.*, 11 Mass. App. Ct. at 999 (looking to the language of the indemnity agreement to assess what constituted *prima facie* evidence of liability).

Jonathan also argues that the Springer Affidavit cannot be considered on summary judgment because Springer's testimony is a "statement of belief" that amounts to "inadmissible

---

[9] The specific amounts paid to each subcontractor are reflected *supra* at note 4.

hearsay." ECF 112, at 7. But the Affidavit satisfies the requirements of Federal Rule of Civil Procedure 56(c)(4), which provides that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. Pro. 56(c)(4). The sworn statements contained in the Springer Affidavit are "based upon [Springer's] personal knowledge or on the basis of EMC's records, of which [he is] the keeper." ECF 106-1, ¶ 1. The relevant facts to which Springer avers—the amounts EMC has suffered in losses and expenses—would be admissible in evidence. *See id.* ¶¶ 7-9, 12-13. And, as an employee and officer with "authority to adjust, manage, and prosecute claims on behalf of EMC," ECF 106-1, ¶ 1, Springer is "competent to testify on the matters stated," Fed. R. Civ. P. 56(c)(4). Accordingly, EMC has produced *prima facie* evidence of the fact and amount of Jonathan's liability.

      B.    <u>Lack of Good Faith.</u>

Seeking to forestall liability, Jonathan contends that a question of fact exists as to whether EMC acted in good faith in incurring the losses and expenses for which it would later seek indemnity. *See Fid. & Guar. Ins. Co.*, 541 F.3d at 7; *Am. Emps.' Ins. Co.*, 35 Mass. App. Ct. at 923. "In this context, '[w]ant of good faith involves more than bad judgment, negligence or insufficient zeal. It carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will.'" *Fid. & Guar. Ins. Co.*, 541 F.3d at 7 (quoting *Hartford Accident & Indem. Co.*, 11 Mass. App. Ct. at 999).

To meet its burden to show that no genuine issue of material fact exists as to its good faith in incurring losses and expenses, EMC has identified the following evidence: (i) the Springer Affidavit, which avers that EMC issued payments on the Bonds "[f]ollowing its independent and

good faith investigation of each claim," ECF 106-1, ¶ 8; (ii) an excerpt of Jonathan's deposition transcript, reflecting his testimony confirming that, on numerous occasions, EMC notified him of specific claims it had received on the Bonds, and that he never disputed any claims to EMC, ECF 116-3, at 22-26; and (iii) a sample Notice of Claim sent to Jonathan related to a Bond claim EMC received,[10] in which EMC sought Jonathan's "written statement of [his] position regarding the circumstances surrounding [the] claim" "to assist in [EMC's] investigation and review of the claim," ECF 116-4, at 2. Such evidence, in substance and form, is sufficient to demonstrate good faith. *See Am. Emps.' Ins. Co.*, 35 Mass. App. Ct. at 923 (considering affidavits of claim supervisors and adjusters as evidence of good faith); *Hartford Accident & Indem. Co.*, 11 Mass. App. Ct. at 999 (considering affidavits, interrogatories, technical reports, and deposition testimony as evidence of good faith).

In arguing lack of good faith, Jonathan does not assert that EMC failed to verify or investigate the claims it received on the Bonds before issuing payments to the claimants. Instead, he contends that EMC failed to conduct a good faith investigation into *Michael's* responsibility for Homeland Power's default on its subcontract obligations related to the D.F. Pray Project. Jonathan represents that, at the time he received EMC's collateral demand in July 2022, he had been "shut out of Homeland" since May 2022 and was, therefore, unable to take any action on Homeland Power's behalf. *See* ECF 112, at 8. Michael ultimately caused Homeland Power's default, Jonathan contends, and EMC was obligated to investigate Michael's alleged misconduct before issuing the payments to D.F. Pray and the subcontractors. *Id.*

---

[10] The Notice of Claim was introduced as Exhibit 57 at Jonathan Carpenter's deposition. ECF 116, at 6 n.8; ECF 116-3, at 23-24.

Any dispute of fact that may exist as to Jonathan or Michael's responsibility for Homeland Power's default on its subcontract obligations is not material to whether EMC acted in good faith in paying claims on the Bonds. EMC had a duty to act in good faith "*in incurring the expenses for which it seeks indemnity.*" *Fid. & Guar. Ins. Co.*, 541 F.3d at 7 (emphasis added). That duty did not *also* require EMC to investigate the reasons why the indemnitors were unable to perform the electrical work necessary to avoid defaulting on their obligations. Jonathan has pointed to no basis in Massachusetts law for his request to so enlarge EMC's duty of good faith. And even if such an expanded duty did exist, Jonathan has introduced no affirmative evidence that EMC's lack of investigation into the cause of Homeland Power's financial struggles stemmed from "a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will." *Fid. & Guar. Ins. Co.*, 541 F.3d at 7 (quoting marks omitted); *see Hartford Accident & Indem. Co.*, 11 Mass. App. Ct. at 999 ("[T]hat blame . . . lay elsewhere . . . may be an issue of fact, [but] it is not material as it was only necessary that the bonding company have acted in good faith when it settled the claim."). Thus, Jonathan has failed to produce evidence that contradicts EMC's submissions demonstrating that it investigated in good faith the claims it received on the Bonds. *See Am. Emps.' Ins. Co.*, 35 Mass. App. Ct. at 923 (affirming summary judgment for surety where indemnitor failed to produce evidence contradicting surety's evidence of good faith).

C.    Doctrine of Frustration of Purpose.

Next, invoking the doctrine of frustration of purpose, Jonathan argues that a dispute of fact exists as to whether the purpose of the Indemnity Agreement was frustrated by the "circumstances surrounding the default and ability of the indemnitors to avoid the default." ECF 112, at 9-10. Once he was "shut out of Homeland" and thus unable to prevent its performance default, Jonathan contends, the purpose of the Indemnity Agreement was frustrated. *Id.*

Under Massachusetts law, "[t]he doctrine of frustration applies 'when an event neither anticipated nor caused by either party, the risk of which was not allocated by the contract, destroys the object or purpose of the contract, thus destroying the value of performance.'" *R.R. Ave. Props., LLC v. Acadia Ins. Co.*, 37 F.4th 682, 689 n.6 (1st Cir. 2023) (quoting *Chase v. Precast Corp v. John J. Paonessa Co., Inc.*, 409 Mass. 371, 374 (1991)). EMC argues, and the Court agrees, that the purpose of the Indemnity Agreement was for EMC to issue the Bonds on Homeland Power's behalf and for the defendants—Jonathan included—to indemnify EMC for losses incurred as a result of the Bonds. ECF 116, at 8. EMC's articulation of the purpose of the Indemnity Agreement accords with the agreement's plain text, which states that the contract is "for the continuing benefit of the Surety . . . for the purpose of saving it harmless and indemnifying it from all loss and expense in connection with any Bonds executed on behalf of" Homeland Power, Jonathan, and Michael. ECF 106-2, at 1. And the "broad language" of the Sections 2 and 3 of the Indemnity Agreement similarly "reflec[t] an intention to provide comprehensive reimbursement to [EMC] of money expended by it in connection with claims." *Hartford Accident & Indem. Co.*, 11 Mass. App. Ct. at 999.

Jonathan, for his part, "provides no argument about what 'object or purpose of the contract' was frustrated." *R.R. Ave. Props., LLC*, 37 F 4th at 689 n.6; *see* ECF 112, at 9-10. Nor has he produced evidence to create a dispute of fact to suggest that the purpose of the contract—as stated on the first page of the Indemnity Agreement—was destroyed by an event not foreseen or caused by the parties to it. The agreement allocated the risk of loss by making Homeland Power, Jonathan, and Michael jointly and severally liable for any losses or expenses incurred by EMC in connection with the Bonds. The undisputed facts demonstrate that EMC issued Bonds on Homeland Power's behalf, and there is no legal or factual reason why Jonathan should not indemnify EMC for losses

it incurred as a result. Whatever the reason for Homeland Power's inability to avoid default, the purpose of the Indemnity Agreement is not frustrated by Jonathan's indemnification of EMC, an obligation to which he committed when he signed the Indemnity Agreement.

## II.      **EMC and Michael's Joint Motion for Voluntary Dismissal.**

EMC and Michael have jointly moved pursuant to Federal Rule of Civil Procedure 41(a)(2) for an order dismissing all claims and counterclaims that were asserted, or could have been asserted, between them in this action, with prejudice and without costs. During discovery, EMC and Michael resolved the claims and counterclaims they respectively asserted against each other through a confidential negotiated settlement agreement. ECF 120, at 1. Although EMC and Michael are in agreement both as to the terms of the settlement and that the requested dismissal be with prejudice, they move for voluntary dismissal by court order pursuant to Rule 41(a)(2), and not by stipulation pursuant to Rule 41(a)(1)(A)(ii), because Jonathan, an appearing party in the case, objects to dismissal.

Often when plaintiffs move for voluntary dismissal pursuant to Rule 41(a)(2), they seek dismissal of their claims *without* prejudice. *See Colón-Cabrera*, 723 F.3d at 87 ("[D]ismissal without prejudice is the norm, 'unless the court finds that the defendant will suffer legal prejudice.'" (quoting *Puerto Rico Mar. Shipping Auth.*, 668 F.2d at 50)). In such cases, the court's analysis as to whether the defendant will be prejudiced by dismissal typically considers the fairness of allowing the plaintiff another opportunity to reassert its claims in a future action. *See Urohealth Sys. Inc.*, 216 F.3d at 160 (listing factors the court can consider, including the defendant's effort and expense of preparation for trial). Here, EMC and Michael seek dismissal *with* prejudice, such that they would each be protected from future claims that fall within the scope of their settlement agreement. *See* ECF 119. "While these circumstances favor dismissal, it behooves [the] court to

consider the interests of [the non-settling defendant]." *N. Ins. Co. of New York v. Bongard S.A.S.*, No. 08-cv-11089-MBB, 2011 WL 1584355, at *1 (D. Mass. April 26, 2011). Accordingly, the Court analyzes whether Jonathan will be prejudiced by an order dismissing EMC and Michael's respective claims and counterclaim against each other.

Jonathan argues that he will suffer prejudice because his primary defense in this action is that Michael is solely to blame for Homeland Power's default. ECF 121, at 4. If EMC's claims against Michael are dismissed, he contends, "he will be left only to point to an empty chair as the responsible party." *Id.* at 5. But Jonathan could, and did, assert crossclaims against Michael. And notwithstanding the viability of Jonathan's crossclaims—which is addressed in connection with Michael's summary judgment motion below—Jonathan's argument itself rests on a faulty premise. The Indemnity Agreement, which Jonathan signed in his individual capacity, provides for joint and several liability. *See* ECF 106-2, at 1; ECF 113, ¶ 16. EMC may thus seek judgment for the full amount of its damages from any of the signatories, *i.e.*, from Jonathan alone, from Michael alone, from Homeland Power alone, or from any combination thereof. *See Boston Edison Co.*, 444 Mass. at 327 n.4.

Further, as EMC and Michael emphasize, the Indemnity Agreement "expressly authorize[s]" EMC "to settle with one or more of the [signatories] individually, and without reference to the others," and provides that "such settlement or composition shall not affect the liability of the other" signatories. ECF 106-2, § 20; *see* ECF 124, 3-4. It further provides that the signatories "expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and . . . consen[t] to any settlement or composition that may be hereafter made." ECF 106-2, § 20. Thus, in entering the Indemnity Agreement, Jonathan effectively authorized EMC to settle with Michael and to seek its full damages under the Indemnity

Agreement from him alone. *See id.* And Jonathan effectively consented to the settlement between EMC and Michael and waived any right to be discharged and released on the basis of their settlement. *See id.* In short, the Indemnity Agreement contemplates the very scenario to which Jonathan now objects. Since the parties do not dispute the validity of the Indemnity Agreement, Jonathan will not be prejudiced if EMC's indemnity claims against Michael are dismissed.

Jonathan also accuses EMC and Michael of seeking dismissal in bad faith. ECF 121, at 3-4. He offers, as the basis for that accusation, EMC's failure to first conduct substantive discovery into the extent to which Michael was ultimately responsible for Homeland Power's default through alleged acts of self-dealing and alleged breach of fiduciary duties. *Id.* Jonathan thus implies that EMC had an obligation to investigate fault before settling its claims with any of the indemnitors. But the Indemnity Agreement imposes no such an obligation on EMC. The Indemnity Agreement provides for joint and several liability and confers upon EMC broad authority to settle with any of the indemnitors individually. *See* ECF 106-2, at 1, § 20; ECF 113, ¶ 13. Such provisions reflect the parties' intent for EMC to readily collect reimbursement for expenses and losses suffered on the Bonds without first needing to investigate individual wrongdoing and responsibility. Thus, even if EMC did forgo investigating Michael's individual responsibility for Homeland Power's default, that would not constitute evidence of bad faith.

Since the Court finds no risk of prejudice to Jonathan and no evidence of bad faith, EMC and Michael's joint motion for voluntary dismissal will be granted.

### III.   <u>Michael's Motion for Summary Judgment on Jonathan's Crossclaims.</u>

Michael separately moves for summary judgment on Jonathan's crossclaims against him for common law breach of fiduciary duty and tortious conduct compelling another to defend. Jonathan asserts that Michael breached his fiduciary duties of good faith and loyalty as a member

of Homeland Holding Company, LLC when he allegedly froze Jonathan out of Homeland Power and/or Homeland Holding Company and intentionally allowed multiple liabilities to inure against Homeland Power. Michael responds that, pursuant to the terms of the Homeland Holding Company, LLC Operating Agreement ("Operating Agreement"), he owed no fiduciary duties to Jonathan.

Consistent with the parties' positions at the motion hearing, the Court applies Delaware law in construing the Operating Agreement. *See* ECF 136; *see also* ECF 128-3, § 18.9 (The Operating Agreement "is governed by and construed in compliance with the laws of the State of Delaware.").[11] The Delaware Limited Liability Company Act expressly "authorizes a limited liability company agreement to modify the duties (including the fiduciary duties) that a member, manager, or other person would owe under common law." *Cygnus Opportunity Fund, LLC v. Washington Prime Grp., LLC*, 302 A.3d 430, 445 (Del. Ch. 2023); *see* 6 Del. C. § 18-1101(c) ("[A] member's or manager's or other person's [fiduciary duties] may be expanded or restricted or eliminated by provisions of the limited liability company agreement; provided, that the limited liability company agreement may not eliminate the implied contractual covenant of good faith and fair dealing."). Even still, "[a] provision eliminating fiduciary duties must be 'plain and unambiguous.'" *Cygnus Opportunity Fund, LLC.*, 302 A.3d at 445 (quoting *Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, 2009 WL 1124451, at *9 (Del. Ch. Apr. 20, 2009)).

Here, the Operating Agreement plainly and unambiguously eliminates the fiduciary duties of members. In relevant part, Article 6.15 provides, "[o]ther than being subject to the implied

---

[11] The Massachusetts statute governing fiduciary and contractual duties in LLCs, M.G.L. c. 15C, § 63, is analogous to the Delaware statute, 6 Del. C. § 18-1101(c). The Massachusetts Supreme Judicial Court accordingly looks to Delaware judicial decisions for guidance in interpreting M.G.L. c. 15C, § 63. *See Allison v. Eriksson*, 479 Mass. 626, 634-35 (2018).

covenant of good faith and fair dealing, a Member is subject only to the fiduciary duties set forth in this Agreement." ECF 128-3, § 6.15; ECF 134, ¶ 60. And, as Michael emphasizes and Jonathan fails to refute, the Operating Agreement is devoid of a provision setting forth fiduciary duties for members. ECF 126, at 10-11; *see* 128-3. The Delaware Court of Chancery has concluded that where an LLC agreement, like this one, "flatly stat[es] that members have no duties other than those expressly articulated," and, at the same time, does not "expressly articulate fiduciary obligations, they are eliminated." *Fisk Ventures, LLC v. Segal*, No. 3017-CC, 2008 WL 1961156, at *11 (Del. Ch. May 7, 2008); *see also Dawson v. Pittco Cap. Partners, L.P.*, No. 3148-VCN, 2012 WL 1564805, at *26-*28 (Del. Ch. April 30, 2012) (interpreting an LLC agreement clause, "No Member . . . shall have any duty to any Member or the Company, except as expressly set forth herein," as eliminating the fiduciary duties of members).

Jonathan responds that Article 18.8 of the Operating Agreement creates ambiguity as to the elimination of members' fiduciary duties. ECF 133, at 8-9. Titled "Effect of LLC Act," Article 18.8 provides, "[e]xcept as otherwise provided in this Agreement, the business and internal affairs of the Company will be governed by the [Delaware Limited Liability Company Act], as amended from time to time. In the event of a conflict between the terms of this Agreement and the Act, this Agreement will govern." ECF 128-3, § 18.8. Jonathan argues that, notwithstanding Article 6.15, Article 18.8 plausibly subjects members to the fiduciary duties provided for by the Delaware Limited Liability Company Act and at common law. But this argument is inconsistent with the plain text of Article 18.8, which states that the Delaware Limited Liability Company Act governs "*except as otherwise provided in this Agreement*," and that the Operating Agreement controls "[i]n the event of a conflict between the terms of the Agreement and Act." ECF 128-3, § 18.8 (emphasis added). As noted, Article 6.15 is clear that members are "subject only to the fiduciary duties set

forth in the [Operating Agreement]." *Id.* § 6.15 To the extent a conflict exists between Article 6.15 and the Delaware Limited Liability Company Act, including with respect to any fiduciary duties owed by members, Article 6.15 controls. *See id.* § 18.8. The Court therefore concludes that the Operating Agreement plainly and unambiguously eliminates the fiduciary duties of the members of Homeland Holding Company, LLC.

When an LLC agreement eliminates the fiduciary duties of a member, claims against that member for breach of fiduciary duty necessarily fail. *See Cygnus Opportunity Fund, LLC*, 302 A.3d at 445 (dismissing breach of fiduciary duty claims where the operating agreement eliminated fiduciary duties). Michael was a member of Homeland Holding Company, LLC, and his fiduciary duties, other than the implied contractual covenant of good faith and fair dealing, were thus eliminated by Article 6.15 of the Operating Agreement. *See* ECF 128-3, § 6.15; ECF 134, ¶¶ 2, 63. Accordingly, Jonathan's breach of fiduciary duty claim against Michael necessarily fails. *See Cyngus Opportunity Fund, LLC*, 302 A.3d at 445.

Jonathan's second crossclaim against Michael—tortious conduct compelling another to defend—requires, as Jonathan concedes, a breach of duty as a necessary element. *See* ECF 133, at 12.[12] The only duty Jonathan has alleged Michael breached is his fiduciary duty as a member of Homeland Holding Company, LLC. Since Michael owed no such fiduciary duty under the Operating Agreement, Jonathan's crossclaim for tortious conduct compelling another to defend, which rises and falls with his breach of fiduciary duty claim, also fails.

---

[12] At the motion hearing, counsel for Jonathan conceded that the viability of his claim for tortious conduct compelling another to defend depends on the viability of his breach of fiduciary duty claim. *See* ECF 136.

## CONCLUSION

For the foregoing reasons, EMC's motion for summary judgment as to Jonathan Carpenter on Counts II, III, and IV of its complaint, ECF 104, is GRANTED. EMC and Michael Carpenter's joint motion for voluntary dismissal, ECF 119, is GRANTED. Accordingly, EMC's claim for declaratory relief (Count I) is dismissed with prejudice in its entirety, EMC's claims for contractual indemnity (Counts II and III) and common law indemnity (Count IV) are dismissed with prejudice as to Michael Carpenter only, and Michael Carpenter's counterclaim against EMC is likewise dismissed with prejudice. Michael Carpenter's motion for summary judgment with respect to Jonathan Carpenter's crossclaims, ECF 125, is GRANTED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: August 27, 2024                    UNITED STATES DISTRICT JUDGE